# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA TRUSH<br>8824 Rising Sun Ave.<br>Philadelphia, PA 19115<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF PHILADELPHIA<br>1401 JFK Blvd.<br>Philadelphia, PA 19106<br><br>   Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Linda Trush (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I.  Introduction

1.  Plaintiff has initiated this action to redress violations by the City of Philadelphia (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 *et. seq*.). Plaintiff asserts herein that she was subjected to a hostile work environment and unlawfully terminated from her employment with the City of Philadelphia in violation of these laws and seeks damages as set forth more fully herein.

### II.  Jurisdiction and Venue

2.  This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of

jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. State of Washington</u>, 326 U.S. 310 (1945) and its progeny.

3.    This action is initiated pursuant to federal law(s). The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as her federal claims herein.

4.    Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.    Plaintiff is proceeding herein under Title VII and the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC. Plaintiff also exhausted her administrative remedies (with respect to her PHRA claims) because she timely filed Charges with the Pennsylvania Human Relations Commission (PHRC) and the charges have remained with the PHRC for over one year.

### III.    Parties

6.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.    Plaintiff is an adult who resides at the above-captioned address.

8.  Defendant is the largest city in the state of Pennsylvania.

9.  At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

## IV.  Factual Background

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired to work for Defendant in or about December of 2010 as an Administrative Assistant for Defendant's Councilman, Brian O'Neill (hereinafter "Councilman O'Neill").

12. For the large majority of Plaintiff's employment with Defendant, Plaintiff specifically worked out of Councilman O'Neill's office located on Bustleton Avenue in Philadelphia (hereinafter the "Bustleton Office") and reported directly to Councilman O'Neill.

13. Throughout her employment with Defendant, Plaintiff was a dedicated and hard-working employee and was not subjected to a history of progressive discipline.

14. In fact, Plaintiff's strong work ethic and exemplary performance was praised by Defendant's management and evidenced by merit-based salary increases throughout her employment.

15. Despite Plaintiff's aforesaid excellent performance, her work environment was tainted by the severe and pervasive sexual harassment that she was subjected to in 2014 by a co-worker named Henry Shain (hereinafter "Shain") and the retaliation that followed once she complained of the same (discussed further *infra*).

16. In or about 2014, Plaintiff was subjected to several severe and overt acts of sexual harassment by Shain, including but not limited to:

    i. On one occasion, Shain came up behind Plaintiff and kissed her face;

    ii. Shain would come into Plaintiff's office when she was alone, lock the door and begin rubbing her shoulders, neck and back and make comments to Plaintiff such as "don't worry, no one will come in, the door is locked,"

    iii. On another occasion Shain came into Plaintiff's office, locked the door, and put his hands down Plaintiff's pants, touching her gentiles; and

    iv. On one occasion, Shain came into Plaintiff's office, locked the door, and told Plaintiff to kiss him "down here" (pointing to his penis) and told Plaintiff not to worry about anyone coming in because he had locked the door.

17. Plaintiff objected to and refused Shain's sexual advances and gestures on and constant basis and threatened to report him. However, Shain would threaten Plaintiff and tell her "if you report me, trust me you will lose your job over me first. They will believe me, not you."

18. Based on these threats, Plaintiff feared that she would lose her job if she reported the sexual harassment that she was being subjected to and therefore was forced to continue working every day in fear regarding what acts of sexual harassment she would be subjected to next by Shain.

19. Plaintiff continued to object and reject Shain's sexual gestures and advances until he was moved to a different department in or about 2015.

20. Despite the fact that Shain was moved to a different department in 2015, Plaintiff's mental health and self-esteem was severely damaged due to the constant sexual harassment and threats made by Shain in 2014.

21. As a result of the foregoing, Plaintiff began experiencing severe mood swings, anxiety, episodes of anger and crying, bouts of depression and panic attacks to the point that she suffered a post-traumatic stress breakdown in or about November of 2016.

22. As a result of her aforesaid breakdown, Plaintiff apprised her husband of some of the sexual harassment that she had been subjected to in 2014 by Shain.

23. Upon learning that his wife was subjected to inappropriate sexual advances/gestures by Shain in 2014, Plaintiff's husband sent a text to Councilman O'Neill, which stated in pertinent part as follows:

> Mr. O'Neill, this is Linda Trush's husband Glen. I am requesting immediate action to remedy a situation involving Linda. For the past several months she has been behaving oddly at home. Tonight, after repeated episodes of anger and crying she told me why she has been acting oddly and begged me not to report it for fear of losing her position on your staff . . . Back in 2014 . . . her coworker Henry Shane [sic], approached her at her desk and "to comfort her" began to rub her shoulders, neck and back. This happened inside your offices after he would lock the door. This victimization continued until he has transferred to another office. She is afraid of Shane [sic] and would rather die than go back to work with him. Please investigate and take action. Call me if I can help answer any questions.

24. Shortly following Plaintiff's husband's text message to Councilman O'Neill, Plaintiff spoke with Councilman O'Neill by phone and provided him with additional details of Shain's sexually inappropriate behavior, including additional acts of sexual harassment she was subjected to by Shain.

5

25. In response to Plaintiff's conversation with Councilman O'Neill (discussed in Paragraph 29 of the instant Civil Action Complaint), Councilman O'Neill referred to Shain as a "predator who needed to be stopped." Councilman O'Neill made this comment to both Plaintiff and her husband.

26. Following her report of sexual harassment to her husband and Councilman O'Neill in November of 2016, Plaintiff requested and took a medical leave of absence from work to care for and treat for her mental health conditions.

27. Plaintiff took approximately three months off from work (a reasonable accommodation under the ADA) for the reasons discussed *supra* and returned to work on or about February 6, 2017.

28. On or about February 3, 2017, prior to Plaintiff's aforesaid return from medical leave, Plaintiff was contacted by Defendant's Human Resources ("HR") representative, Linda Rios (hereinafter "Rios") to discuss Plaintiff's return to work.

29. During her telephone call with Rios, Plaintiff asked Rios for confirmation that Shain had been directed not to come to the Bustleton Office (where Plaintiff had worked for six years) due to the report of sexual harassment she and her husband had made to Councilman O'Neill prior to her medical leave. Rios responded stating that she had not yet spoken to Shain about Plaintiff's complaint of sexual harassment, nor had Defendant instructed Shain to stay away from Plaintiff's work location (even thought Defendant had three months while Plaintiff was on medical leave to investigate her claims).

30. Upon learning that Defendant had not so much as begun investigating her complaint of sexual harassment, spoke to Shain regarding the same, or instructed Shain to stay

6

away from Plaintiff's physical work location, Plaintiff informed Rios that she did not feel safe or comfortable returning to the Bustleton Office *until* Shain was instructed to stay away.

31. In response to Plaintiff's aforesaid safety concerns (discussed in Paragraph 35 of the instant Civil Action Complaint), Rios informed Plaintiff to report to Councilman O'Neill's City Hall office (hereinafter the "City Hall Office") upon her return to work on February 6, 2017.

32. Upon Plaintiff's return to work from her medical leave of absence on February 6, 2017 – three months after her initial complaint of sexual harassment – Plaintiff met with Rios so that, according to Rios, she could begin a "formal" internal investigation of her sexual harassment complaint, per Defendant's established policies,.

33. During her meeting with Rios (discussed *supra*), Plaintiff gave a detailed report of the sexual harassment that she had been subjected to by Shain and the negative impact it had on her mental health.

34. Per Defendant's Sexual Harassment Policy, formal investigations are to be reduced to writing and signed by the complaining party, but at no time did Rios reduce Plaintiff's complaint to writing, ask Plaintiff to reduce her complaint to writing, or ask her to sign any document memorializing her complaint of sexual harassment.

35. The day after Plaintiff's February 6, 2017 meeting with Rios, Plaintiff received an email from Rios assigning Plaintiff to the City Hall Office indefinitely until further notice.

36. Plaintiff responded to Rios' email reassigning her to City Hall Office and expressed that she did not believe it was fair to be reassigned to a less desirable location that was an hour from her home and informed Rios that she considered Defendant's decision to transfer her as "punitive and retaliatory" for having reported sexual harassment (as Defendant could have

simply instructed Shain not to report to the Bustleton Office and confirmed with Plaintiff that such instructions had been conveyed).[1]

37. On or about February 9, 2017 and February 15, 2017, Plaintiff provided Defendant with doctor's notes from her physician requesting the reason accommodation that she be permitted to return to the Bustleton Office, where she had worked for six-plus years prior to going out on leave, as it would have assisted Plaintiff with her transition back to her "regular work schedule."

38. Plaintiff aforesaid accommodation requests to return to work in the Bustleton Office were denied and Plaintiff was forced to continue reporting to the City Hall Office.

39. In addition her requests to work from the Bustleton Office, Plaintiff's physician also identified in the February 9, 2017 note that Plaintiff "will be attending therapy sessions twice per week until further notice. Appointment times will vary."

40. While working for the City Hall Office, Plaintiff was given virtually no work.

41. In addition to being provided with virtually no work while placed at the City Hall Office, Plaintiff was also treated in a very hostile manner while working there. For example, but not intending to be an exhaustive list:

> i. Shortly after being placed to work in the City Hall Office, Plaintiff was informed by Rios that effective immediately, Plaintiff would no longer report to Councilman O'Neill but instead to Alice Udovich (hereinafter "Udovich"), Councilman O'Neill's Executive Assistant;

---

[1] Plaintiff had fully explained to Rios during their meeting on February 6, 2017 that the only reason she was afraid to return to the Bustleton Avenue office is because Rios had told Plaintiff on February 3, 2017 that Defendant had not spoken to Shain regarding Plaintiff complaints or instructed him to stay away from the Bustle Avenue office.

    ii. Defendant's management refused Plaintiff's request to have her personal work supplies/items moved to her new work location;

    iii. Plaintiff was not given an employee access card and therefore was forced to stand in the public security line and ask for a vistor's pass every day in order to gain entrance to the building;

    iv. Plaintiff was required to use the public restrooms instead of the employee restrooms because she was not given a key pass;

    v. Councilman O'Neill refused to have any face-to-face interaction with Plaintiff from the moment she returned from medical leave on February 7, 2017 until her unlawful termination (discussed *supra*), even though she had directly reported to him for six-plus years prior to returning from her aforesaid medical leave; and

    vi. Plaintiff was supposed to be brought up-to-date on any matters that were left pending when she went on medical leave and Rios specifically instructed Udovich to do so, but this never happened (despite Plaintiff's repeated requests for said information).

42. The hostile work environment that Plaintiff was being subjected to upon her return from medical leave and complaint of sexual harassment (discussed *supra*) caused her significant stress and exacerbated her mental health conditions, such that she continued to take time off for therapy sessions, doctor's appointments, and flare ups of her health conditions and informed Defendant's management when she needed to be absent from work or leave early for the same.

43. On or about February 24, 2017, Plaintiff sent an email to Udovich informing her that her health conditions had become exacerbated as a result of being "made to come here to an unfamiliar office with no supplies and none of my work." Plaintiff further informed Udovich that she was upset by the fact that she had reported sexual harassment in November of 2016 and still had not received an updated status regarding Defendant's investigation of the same.

44. Plaintiff received no response to her February 24, 2017 email to Udovich and therefore on or about March 2, 2017, Plaintiff sent an email to Rios asking for a status update on Defendant's alleged investigation into her complaints of sexual harassment. Plaintiff also expressed in her email to Rios that she felt there was a significant lack of responsiveness on Defendant's part regarding her sexual harassment complaints.

45. On March 7, 2017, Plaintiff received a brief letter from Rios informing Plaintiff that she [Rios] had completed her alleged investigation into Plaintiff's complaint of sexual harassment, and without providing any further explanation, stated that Defendant was "unable to substantiate [Plaintiff's] allegation against Mr. Shain."

46. Approximately one week following Rios's March 7, 2017 letter (discussed *supra*), Councilman O'Neill sent Plaintiff an email on or about March 15, 2017 and informed her that she was being permanently assigned to work at the City Hall Office in the legislative affairs department (a department that Plaintiff had no experience with), and that she would permanently be reporting to Udovich.

47. Plaintiff was informed that she was receive training from Udovich as it pertained to her new role with the legislative affairs department, but this never happened.

48. On or about March 16, 2017, Plaintiff responded to Councilman O'Neill's email expressing that she was upset at the permanent change in her work location and duties and that

she believed these adverse actions were taken in retaliation and as a "direct result of the complaint I brought forward against a male coworker and associate of yours."

49. Plaintiff also asked Councilman O'Neill in her March 16, 2017 response email to reconsider his decision – taking into account her health conditions and doctor's recommendations - and return her to her regular work location and duties.

50. Plaintiff's request for Councilman O'Neill to reconsider his discriminatory and retaliatory decision of permanently reassigning Plaintiff to the City Hall Office was denied and instead, Plaintiff was chastised for taking time off to care for and treat for her health conditions and essentially told that the only thing he [Councilman O'Neill] would do to accommodate her disabilities would be to reduce her down to part-time.

51. Therefore, Plaintiff was forced to continue working at City Hall, being subjected to constant hostility, animosity, and retaliation by Defendant.

52. The hostile work environment that Plaintiff was subjected to following her complaint of sexual harassment reached its zenith on or about April 11, 2017 when she was approached by Udovich (acting on behalf of Councilman O'Neill) and given a termination letter from Councilman O'Neill in which he stated that he was thankful for Plaintiff's years of service to the citizens of Philadelphia, but that following "an internal staff review," he was terminating her employment effective immediately.

53. Upon receipt of her termination letter (discussed *supra*), Plaintiff expressed her confusion with Defendant's decision to terminate her employment, stated that she had done nothing to warrant being fired, and asked Udovich why she was being terminated after years of dedicated service.

11

54.     In response to Plaintiff's question as to why she was being terminated from her employment with Defendant, Udovich stated "you know why." When Plaintiff expressed that she did not understand what Udovich meant, Udovich responded by stating "maybe you shouldn't have made a complaint."

55.     In the same conversation on April 11, 2017, Udovich proceeded to accuse Plaintiff of coming and going as she pleased – which was not true. Plaintiff had only missed time intermittently from work to care for and treat for her aforesaid mental health conditions (which were being exacerbated by the hostile work environment that Defendant was subjecting her to).[2]

56.     Following her termination from Defendant, Plaintiff was informed by the Pennsylvania Department of Labor's Unemployment Division that the reason Defendant claimed it terminate her employment was "Lack of Work."

57.     If Defendant had truly been cutting staff pursuant to an internal staff review or due to lack of work, it is averred that there were several employees who had less seniority, experience, and qualifications than Plaintiff who could have been terminated instead of Plaintiff.

58.     Upon information and belief, Shain is still employed with Councilman O'Neill's office.

59.     Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to hostile work environment and terminated in violation of Title VII and the ADA.

**Count I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Retaliation)**

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] For example, Plaintiff produced several doctor's notes in February and March explaining that she was missing work due to stress, anxiety, depression.

61. Plaintiff believes and therefore avers that she was subjected to a hostile work environment, permanently assigned to a different office location under a different department and different management (despite her requests otherwise), and ultimately terminated because of her complaint of sexual harassment.

62. These actions as aforesaid constitute violations of Title VII.

### Count II
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### (Retaliation)

63. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

64. Plaintiff re-asserts the same claims as set forth in Count I herein, as they constitute the same violations of the Pennsylvania Human Relations Act ("PHRA"), which is the state equivalent of such laws interpreted and analyzed in the same manner in the Third Circuit.

### Count III
### Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
### [3] Hostile Work Environment & [4] Failure to Accommodate)

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff requested several accommodations for her aforesaid mental health conditions during the last approximate six months of her employment with Defendant, including but not limited to:

    i. A block medical leave of absence from November of 2016 through February of 2017;

  ii. The ability to work at her original work location (the Bustleton Office) as opposed to the City Hall Office; and

  iii. The ability to take intermittent time off from worked (including full-day absences and leaving work early on occasion) to attend therapy sessions, doctor's appointments and/or when she was experiencing flare ups of her aforementioned mental health conditions.

67. While Plaintiff was granted some accommodations, others were denied by Defendant without first engaging in any interactive dialogue.

68. Furthermore, Plaintiff was subjected to retaliation in response to her requested medical accommodations (including but not limited to alluding that Plaintiff was terminated in part for taking time off from work related to her disabilities).

69. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constituted protected activities); and/or (4) Defendant's refusal to engage in the interactive process and accommodate Plaintiff's disabilities.

70. Defendant's unlawful discrimination and retaliation constitutes violations of the ADAAA.

## Count IV
### Violations of the Pennsylvania Human Relations Act ("PHRA")
**(Retaliation)**

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Plaintiff re-asserts the same claims as set forth in Count III herein, as they constitute the same violations of the Pennsylvania Human Relations Act ("PHRA"), which is the state equivalent of such laws interpreted and analyzed in the same manner in the Third Circuit.

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of retaliating against employees and is to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto (awarding Plaintiff such injunctive and/or equitable relief);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, bonuses and medical and other benefits. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination or retaliation at the hands of Defendant until the date of verdict (in addition to front pay or other equitable relief);

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s)).

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

F.	Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                    Respectfully submitted,

                    **KARPF, KARPF & CERUTTI, P.C.**

                    Ari R. Karpf, Esquire
                    3331 Street Road
                    Building 2, Suite 128
                    Bensalem, PA 19020
                    (215) 639-0801

Dated: July 21, 2021

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Linda Trush | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| 7/21/2021 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __8824 Rising Sun Avenue, Philadelphia, PA 19115__

Address of Defendant: __1401 JFK Blvd, Philadelphia, PA 19106__

Place of Accident, Incident or Transaction: __Defendants place of business__

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __7/21/2021__   _[signature]_   ARK2484 / 91538
  *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf__, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __7/21/2021__   _[signature]_   ARK2484 / 91538
  *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# CIVIL COVER SHEET

JS 44 (Rev. 06/17)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TRUSH, LINDA

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
CITY OF PHILADELPHIA

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | 861 HIA (1395ff) | 480 Consumer Credit |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 790 Other Labor Litigation | 864 SSID Title XVI | 890 Other Statutory Actions |
| | | | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment | 535 Death Penalty | 462 Naturalization Application | | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | 448 Education | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 7/21/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE