IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LINDA TRUSH                                        :
                                                   :          CIVIL ACTION
              v.                                   :
                                                   :          NO. 21-3254
CITY OF PHILADELPHIA                               :

**MEMORANDUM**

**SURRICK, J.**                                              **DECEMBER 6, 2021**

Presently before the Court is Defendant City of Philadelphia's Motion to Dismiss for Failure to State a Claim (ECF No. 4) and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 5).  Plaintiff's Complaint alleges that her employer, Defendant, discriminated against her by subjecting her to a hostile work environment and unlawfully terminating her position.  In its Motion, Defendant argues that: (1) Plaintiff is not subject to the protections of Title VII, the Pennsylvania Human Relations Act (PHRA), or the Americans with Disabilities Act (ADA) because she is not an employee as defined in those statutes; (2) Plaintiff failed to exhaust her administrative remedies; and (3) Plaintiff's claims are time-barred by the applicable statutes of limitations.  For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

Plaintiff alleges in her Complaint that the Defendant violated her rights under Title VII, the PHRA, and the ADA when it subjected her to a hostile work environment and ultimately fired her after she complained that a co-worker sexually harassed and assaulted her.  In its Motion to Dismiss, Defendant alleges that Plaintiff was a member of a city councilman's personal staff, and therefore not an employee under the above statutes.  This fact-specific inquiry requires us to carefully analyze the Complaint to determine whether Plaintiff's alleged

responsibilities and associations disqualified her from the worker protections that she argues have been violated.

Plaintiff's Complaint alleges that in December of 2010, Philadelphia Councilman Brian O'Neill hired Plaintiff as an administrative assistant.  (Compl. ¶ 11, ECF No. 1.)  Plaintiff worked at Councilman O'Neill's Bustleton Avenue office and reported directly to him.  (*Id.* at ¶ 12.)

In 2014, Plaintiff's co-worker, Henry Shain, sexually harassed her on at least four different occasions.  (*Id.* at ¶ 15-16.)  On one occasion, Shain kissed Plaintiff.  (*Id.* at ¶ 16.)  On another occasion, after locking Plaintiff's office door, he rubbed her shoulders.  (*Id.*)  On yet another occasion, he locked her door, put his hands down her pants, and touched her genitals.  (*Id.*)  In the last alleged instance of harassment, he again locked her door and told her to kiss his penis.  (*Id.*)  Plaintiff refused his advances and threatened to report him, but Shain told Plaintiff that she would lose her job if she did.  (*Id.* at 17.)  When Shain transferred to another department in 2015, the advances ceased.  (*Id.* at ¶ 19.)  As a result of the harassment, Plaintiff suffered "a post-traumatic stress breakdown."  (*Id.* at ¶ 21.)  In November of 2016, she reported the harassment to Councilman O'Neill, and Plaintiff took a three-month leave of absence as a result of her mental health conditions.  (*Id.* at ¶ 26.)

In February of 2017, Plaintiff returned to work, and Human Resources Representative Linda Rios met with Plaintiff to initiate a formal investigation into Shain's harassment.  (*Id.* at ¶ 32.)  On the day of that meeting, Rios emailed Plaintiff assigning her to the City Hall Office indefinitely, which Plaintiff protested because the location was farther from her home.  (*Id.* at ¶ 35-36.)  Later, Rios reassigned Plaintiff to report to Councilman O'Neill's Executive Assistant, Alice Udovich.  (*Id.* at ¶ 41.)  While at City Hall, Plaintiff was given "virtually no work," was

not brought up to date on matters pending when she went on medical leave, was denied an employee access card, and was refused any face-to-face interaction with Councilman O'Neill. (*Id.* at ¶ 40-41.)  Shortly thereafter, Plaintiff provided her employer with two doctors' notes requesting that she return to the Bustleton Office and stating that Plaintiff required therapy sessions twice per week.  (*Id.* at ¶ 37, 39.)

On February 24, 2017, Plaintiff told Udovich that her health conditions were exacerbated by the move to City Hall and that she was upset that there was no update about the investigation. Udovich did not respond.  (*Id.* at ¶ 43-44.)  In early March, Rios informed Plaintiff that the investigation was unable to substantiate Plaintiff's allegations.  (*Id.* at ¶ 44-45.)

On March 15, 2017, Councilman O'Neill emailed Plaintiff, informing her that she was permanently assigned to the City Hall Office in the legislative affairs department (in which she had no experience) and would permanently report to Udovich.  (*Id.* at ¶ 46.)  When Plaintiff protested, Councilman O'Neill "chastised [her] for taking time off" and stated that the only solution he could offer would be to reduce her hours to part-time work.  (*Id.* at ¶ 48-50.)

On April 11, 2017, Udovich, acting on Councilman O'Neill's behalf, handed Plaintiff a termination letter.  (*Id.* at ¶ 52.)  When she asked why she was fired, Udovich replied, "You know why," and subsequently explained, "maybe you shouldn't have made a complaint."  (*Id.* at ¶ 53-54.)

Plaintiff timely filed charge of discrimination under Title VI and the ADA with the Equal Employment Opportunity Commission (EEOC) and filed the instant lawsuit within ninety days of receiving a right to sue letter from the EEOC.  (*Id.* at ¶ 5.)  She timely filed a PHRA claim with the Pennsylvania Human Relations Commission (PHRC), and the charges remained with the PHRC for over one year.  (*Id.* at ¶ 5.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements...."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

4

and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009)

(quoting *Iqbal*, 556 U.S. at 679).

Finally, "a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). A prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002). Therefore, it is "not a proper measure of whether a complaint fails to state a claim." *Fowler*, 578 F.3d at 213. "Instead of requiring a prima facie case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" *Connelly*, 809 F.3d at 789 (quoting *Phillips*, 515 F.3d at 234).

## III.  DISCUSSION

Defendant moves to dismiss all claims. Defendant argues that Plaintiff was Councilman O'Neill's personal staff, and not his employee under Title VII and the PHRA, thus barring her from invoking their protections. This argument should be assessed after the parties have an opportunity to gather a sufficient factual record. Defendant raises the same argument under the ADA that Plaintiff is personal staff, not an employee. We reject this argument because the ADA does not contain a personal staff exemption to its definition of employee. In addition, we reject Defendant's arguments that Plaintiff failed to sufficiently allege that she exhausted her administrative remedies and filed her claims within the statute of limitations. Plaintiff adequately alleged satisfaction of these requirements. Moreover, Defendant did not satisfy its burden to plead and prove the statute of limitations and exhaustion affirmative defenses. Thus, Defendant's Motion to Dismiss will be denied in full.

A.      **Personal Staff Exemption**

Defendant argues that Plaintiff's claims must be dismissed because she is not an

employee under Title VII, the PHRA, and the ADA.  Defendant argues that Plaintiff's duties fall

within the personal staff exemption to employee protections.  These arguments will be addressed

below.

1.   *Title VII and PHRA*

We first address the personal staff exemption under Title VII and the PHRA.  *See* 42

U.S.C. §§ 2000e; 43 P.S. §§ 951.  Under Title VII and the PHRA, a plaintiff must fit within the

statute's definition of employee to be subject to its protections.  *See* 42 U.S.C. § 2000e(f).

Section 2000e(f) sets forth the applicable definition:

> The term "employee" means an individual employed by an employer, except
> that the term "employee" shall not include any person elected to public office
> in any State or political subdivision of any State by the qualified voters thereof,
> or any person chosen by such officer to be on such officer's personal staff…

The PHRA uses the same definition of employee.  *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d

Cir. 2009).  Defendant alleges that Plaintiff does not qualify as an employee because she falls

within the personal staff exemption.

The "personal staff" exemption is narrowly construed to apply to only individuals "in

highly intimate and sensitive positions of responsibility. . ."  *Giordano v. Unified Jud. Sys. of

Pennsylvania*, No. 20-277, 2021 WL 1193112, at *5 (E.D. Pa. Mar. 30, 2021) (internal citations

omitted).  Recently, the Third Circuit adopted a variation of the widely used factor test set forth

in *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985) for determining whether a

plaintiff falls within the personal staff exemption.  *Clews v. Cty. of Schuylkill*, 12 F.4th 353, 360

(3d Cir. 2021).  The *Teneyuca* factors are as follows:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca*, 767 F.2d at 151.

In *Clews*, the Third Circuit highlighted that the test is highly factual. Rather than adopt a "checklist" that may result in courts "tally[ing] up and spit[ting] out a score without an eye on the principles," the Third Circuit highlighted two key themes. *Clews*, 12 F.4th at 361 (quoting *In re Owens Corning*, 419 F.3d 195, 210 (3d Cir. 2005)).  For an employee to be a member of an elected official's personal staff, (1) the plaintiff must work closely with the elected official "in a sensitive position of trust and confidence," and (2) the official must exercise "personal control over the employee's hiring, promotion, work conditions, discipline, and termination."  *Id.* at 362 (finding genuine issue of fact as to whether deputy coroners were employees where the jury could conclude that the Chief Deputy Coroner was the Coroner's top advisor and it was unclear whether the Coroner could hire and fire deputy coroners at will).  We note that *Clews* involved a motion for summary judgment, not a motion to dismiss.

In assessing the first requirement—whether the plaintiff works in a sensitive position of trust and confidence with the elected official—the Third Circuit highlighted four of the *Teneyuca* factors as useful: whether the position is personally accountable to only the official; whether the plaintiff represents the elected official in the eyes of the public; the level of the position within the organization's chain of command; and whether the plaintiff handles sensitive and confidential information for the elected official.  *Id.* at 361.  Essentially, "members of an elected official's personal staff must have a close working relationship with that official, often

demonstrated by the official's direct and immediate supervision over personal staff, regular

contact between them, and personal staff being trusted to handle sensitive or confidential

information and decisions." *Id.* at 362.

In assessing the second requirement—whether the official has personal control over the

employee's hiring, promotion, work conditions, discipline, and termination—the Third Circuit

focused on the remaining *Teneyuca* factors: whether the elected official has plenary powers to

hire and fire the plaintiff and exercises considerable control over the plaintiff's actions. *Id.* For

this factor, courts should consider whether the official selected the plaintiff (compared to a staff

member hired by a previous administration), whether the official had power of termination and

promotion, whether the plaintiff only answers to the official, and whether he or she had control

over the plaintiff's work conditions. *Id.*

The vast majority of cases addressing whether the plaintiff is an employee or member of

personal staff do so at summary judgment, after the parties have had an opportunity to

investigate the evidence at issue and make detailed, fact-based claims. *See id.* (denying

summary judgment); *Gupta v. First Jud. Dist. of Pa.*, 759 F. Supp. 2d 564, 571 (E.D. Pa. 2010)

(granting summary judgment because law clerk to Court of Common Pleas judge was personal

staff); *Conley v. City of Erie, Pa.*, 521 F. Supp. 2d 448, 454–55 (W.D. Pa. 2007) (granting

summary judgment because Public Safety Director was personal staff to the mayor where he and

met informally with the mayor several times per day, participated in citizen meetings and labor

negotiations, and was directly supervised by the mayor); *Cf. Giordano*, 2021 WL 1193112, at *6

(denying motion to dismiss because staff attorney to the Pennsylvania Superior Court was not

personal staff). One District Court in this Circuit recently denied a motion to dismiss arguing

that the plaintiff was personal staff, rather than an employee, deeming the "matter [] best suited

to be decided after the parties have had a full and fair opportunity to gather sufficient record evidence as to what plaintiff's position entailed, in addition to those duties as stated in her job description." *Buka v. Allegheny Cty.*, No. 669, 2021 WL 1197343, at *5 (W.D. Pa. Mar. 30, 2021).

The questions raised by the Third Circuit's analysis are highly factual in nature.  Though the Complaint has provided some information about who hired, supervised, transferred, and terminated Plaintiff's employment, it lacks a description of her job responsibilities, the level of trust with Councilman O'Neill, and the level of sensitivity of the information handled.   These factual inquiries are further complicated by the fact that Plaintiff's job responsibilities and supervision changed from her return from leave through her termination.  Because these highly factual questions would be better answered after the parties have had an opportunity to generate a record, the Motion to Dismiss will be denied.  *See Buka*, 2021 WL 1197343, at *5.

### 2.  ADA

Next, we address the definition of an employee under the ADA.  *See* 42 U.S.C. §§ 12111. Defendant also asserts that Title VII's definition of "employee" applies to the ADA.  However, the ADA does not use definition of employee from 42 U.S.C. § 2000e; it has its own, separate definition that does not exclude personal staff.  Therefore, Defendant's motion to dismiss with respect to the ADA will be denied as well.

Unlike Title VII and the PHRA, the ADA defines an employee as "an individual employed by an employer."  42 U.S.C. § 12111(4).  An employer is "a person engaged in an industry affecting commerce" with specifications to the number of employees and the days each employee works.  *Id.* at § 12111(5).  Employers do not include the United States, its wholly owned corporations, Indian tribes, or bona fide private membership clubs.  *Id.*  The ADA does

not recognize an exemption to its definition of an employee for an elected official's personal staff.  *See id.*

Moreover, the ADA adopts Title VII's definitions of "person," "labor organization," "employment agency," "commerce," and "industry affecting commerce."  42 U.S.C. § 12111(7) (referencing § 2000e).  Had Congress intended that the ADA also adopt Title VII's definition of employee, it would have done so.

Because the ADA contains no personal staff exemption to the definition of an employee, Defendant's Motion to Dismiss alleging that Plaintiff is personal staff will be denied.

**B.      Administrative Exhaustion and Statute of Limitation**

Defendant also moves to dismiss the complaint for failure to adequately allege that Plaintiff exhausted her administrative remedies or file her claim within the statute of limitations.

*1.    Applicable Law*

A plaintiff has 180 days from the unlawful employment practice to file Title VII and ADA employment discrimination claims with the EEOC and 300 days from the unlawful employment practice to file with a parallel state agency.  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) (detailing Title VII's administrative procedures); *Churchill v. Star Enter.,* 183 F.3d 184, 190 (3d Cir. 1999) (stating that the ADA follows same administrative procedures as Title VII.  If the EEOC issues a right to sue letter to a plaintiff, she "has exhausted administrative remedies" and has ninety days from receipt of the right to sue letter to file a private action. *Burgh*, 251 F.3d at 469.  The PHRA's statute of limitations begins to run once the PHRC has closed the complaint. *Id.* at 475; 43 P.S. § 962(c)(2).

"A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the

EEOC [] for conciliation or resolution." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997); *see Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013).  However, because it is an affirmative defense, defendant "bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).  Similarly, failing to comply with the statute of limitations is an affirmative defense, of which the defendant has the burden to plead and prove.  *Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001).

### 2.   Application

Defendant asserts that Plaintiff has not pled any information showing that she exhausted her administrative remedies and therefore the statutes of limitations have tolled.  However, the Complaint alleges the following:

> Plaintiff is proceeding herein under Title VII and the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC. Plaintiff also exhausted her administrative remedies (with respect to her PHRA claims) because she timely filed Charges with the Pennsylvania Human Relations Commission (PHRC) and the charges have remained with the PHRC for over one year.

(Compl. ¶ 5.)  Defendant has produced no evidence to prove Plaintiff did not actually exhaust her administrative remedies; it merely asserts that Plaintiff's pleadings are insufficient to meet her burden.  However, because Plaintiff pled that she exhausted her administrative remedies and timely filed her complaint, Defendant must plead *and prove* that this is false in order to prevail.  *See Runyon*, 130 F.3d at 573.  Since Plaintiff met her burden and Defendant failed to meet its

burden in raising an affirmative defense, Defendant's Motion to Dismiss for failure to exhaust administrative remedies or file within the statute of limitations will be denied.[1]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied on all counts. An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[1] Plaintiff attaches to her Response in Opposition to Defendant's Motion to Dismiss the right to sue letter, which is dated May 4, 2021. While we are not required to consider this evidence in order to determine that Plaintiff has met her burden, we may take judicial notice of the fact that her right to sue letter was issued on that date as there is no dispute to its authenticity. *See Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). This documentation further supports Plaintiff's assertion that her claims were timely filed and her administrative remedies were exhausted.